## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

SARAH AMANDA MCKAY,      )
           )
        Petitioner,      )
           )
v.           )      **Case No. 17-CV-576-GKF-CDL**
           )
ABOUTANAA EL HABTI, Warden,[1]      )
           )
        Respondent.      )

## OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner Sarah Amanda McKay ("McKay") is a prisoner proceeding *pro se*.  She is currently in the custody of the Oklahoma Department of Corrections and confined in the Mabel Bassett Correctional Center in McLoud, Oklahoma.  She challenges her convictions and sentences for two counts of child neglect in Tulsa County District Court (Case No. CF-2014-6221).  The Oklahoma Criminal Court of Appeals ("OCCA") affirmed on March 30, 2017.  (Dkt. 9-3.)  For the reasons discussed below, the petition is DENIED.

McKay filed the instant Petition for Writ of Habeas Corpus (Dkt. 1) on October 13, 2017, challenging her convictions and sentences as in violation of federal law on the following grounds:

1.  The trial court failed to sever McKay's trial from her co-defendant's;

2.  The trial court improperly admitted expert medical testimony;

3.  The trial court improperly limited McKay's cross-examination of a state's witness;

4.  The trial court failed to grant McKay's request for continuance;

---

[1]  Petitioner is incarcerated at the Mabel Bassett Correctional Center (MBCC).  Pursuant to Fed. R. Civ. P. 25(d), the Court therefore substitutes the MBCC's current warden, Aboutanaa El Habti, in place of the MBCC's former warden, Debbie Aldridge, as party respondent.  The Clerk of Court shall note this substitution on the record.

5.   The trial court failed to instruct the jury on a lesser offense;

6.   The trial court improperly admitted gruesome and inflammatory photographs;

7.   The trial court improperly allowed prosecutorial misconduct;

8.   McKay received ineffective assistance of counsel;

9.   The trial court improperly admitted victim impact testimony; and

10. The trial court handed down an excessive sentence.

The State of Oklahoma moved to dismiss claims 1, 2, and 5 of the petition because McKay did not raise them in her direct appeal.  (Dkt. 8.)  This Court determined McKay failed to exhaust her state court remedies as to claims 1 and 2 because the theories she raised in her petition were different from those she raised on appeal, and thus she did not "fairly present" the claims in state court, as required under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The Court found, however, that McKay's habeas ground 5 was raised appropriately in state court.  The Court determined, therefore, McKay had procedurally defaulted claims 1 and 2, and informed McKay a procedural bar would apply to those claims unless she responded within thirty days (by September 12, 2018) and demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to overcome the default.  (Dkt. 11.)  McKay never filed a response.  Thus, she has failed to overcome the procedural bar.  Accordingly, as a preliminary matter, McKay's habeas claims 1 and 2 are DENIED as procedurally defaulted.

## PROCEDURAL BACKGROUND

After a joint trial, a jury convicted Petitioner Sarah Amanda McKay and her husband, co-defendant Robert McKay, of two counts of Child Neglect in the Tulsa County District Court (Case No. CF-2014-6221).   The minor victims, C.L. and J.L. were Petitioner McKay's biological children; co-defendant Robert McKay was their stepfather.  A jury found both defendants guilty of child neglect.  On March 22, 2016, the trial court sentenced both defendants to life in prison for

the child neglect of C.L. (Count 1) and to twenty-seven years in prison for the child neglect of J.L. (Count 2). The trial court ordered the sentences to run consecutively. (Dkt. 16-8, pp. 3-14.)

With assistance of counsel, Petitioner McKay filed a direct appeal to the Oklahoma Criminal Court of Appeals (Dkt. 9-1), raising the following errors:

I.      The trial court erred in failing to *sua sponte* order the severance of the joint trial of Petitioner McKay and her co-defendant, Robert McKay.

II.     The trial court improperly admitted expert testimony.

III.    The trial court improperly limited the cross-examination of prosecution witness Wallace Garner.

IV.     The trial court erred in failing to grant a continuance to allow the defense further time to prepare for response to testimony outside of the timeframe specified in the charging document.

V.      The trial court erred in failing to instruct the jury on a lesser offense.

VI.     The trial court abused its discretion in admitting gruesome and inflammatory photographs that were more prejudicial than probative.

VII.    The prosecutor made improper comments in closing argument that denied McKay a fair trial.

VIII.   McKay did not receive effective assistance of counsel.

IX.     The trial court erred in allowing an improper victim impact statement at sentencing.

X.      McKay's sentence was excessive.

## FACTUAL BACKGROUND

The following facts were adduced at trial. Victim C.L., age eleven, suffered from Charcot-Marie-Tooth disease and leukoencephalopathy. He was unable to move his limbs; he required feeding through a gastrostomy tube; he received oxygen from a machine; and he took multiple medications daily. There were medical devices in the McKay home to assist C.L. with breathing and eating. Evidence at trial showed the McKays did not care for C.L. appropriately. He was malnourished and unbathed. His teeth were decayed, he had gum disease, and some teeth had

3

fallen out due to lack of dental care.  The medical devices attached to his body were not well maintained or cleaned appropriately.  There was evidence C.L. did not receive his medications regularly.

In November 2014, the utilities (electricity and gas) had been shut off at the McKay home. It was cold inside the house.  Certain of the medical devices were inoperable without electricity. J.L. testified it was so cold that he could not bathe.  On the day of C.L.'s death, there was no heat in the house and none of his medical devices had been charged for battery operation, although there was testimony the McKays left C.L. at home and went to a friend's house to charge their mobile phones.  Evidence was presented that when law enforcement arrived, the home was in an unkempt condition, cluttered, with dog feces on the floor.

J.L. testified he frequently fed C.L. and had been doing so as long as he could remember. J.L., aged twelve, was not enrolled in school at the time of C.L.'s death.  He testified his mother and Mr. McKay regularly smoked marijuana in the home, and food was frequently unavailable. He was often cold and hungry.[2]

### STANDARD OF REVIEW

Under 28 U.S.C. § 2254, federal district courts have jurisdiction to hear claims from state prisoners that their convictions were obtained in violation of the United States Constitution.  A prisoner must "exhaust" available state court remedies by "fairly presenting" each claim raised in a petition for writ of habeas corpus to the courts in the state of conviction.  State courts are first granted the opportunity to "correct alleged violations" of constitutional magnitude before those claims may be heard in federal court.  *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995) (per

---

[2]  These facts are summarized by the parts of the transcript submitted with the State of Oklahoma's brief in opposition to the petition for writ of habeas corpus. (Dkt. 15-1.)  Additional relevant facts will be discussed *infra* in the analysis and discussion of the enumerated claims.

curiam).  The purpose of habeas review is to "guard against extreme malfunctions in the state criminal justice systems" not as "a substitute for ordinary error correction" through appeal in state court.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

If a prisoner has fully exhausted each claim in state court, the petition for writ of habeas corpus will be granted only if the state court's adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

A habeas court will first analyze whether federal law "was clearly established by the Supreme Court at the time of the state court judgment." *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011).  A state court's judgment is "contrary to" federal law where "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (citing *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004)).  An unreasonable application of federal law occurs where the state court identifies the proper controlling legal principle but "unreasonably applies" the law to the facts of the defendant's case.  *Id.*

## DISCUSSION AND ANALYSIS

## <u>Ground 3:  Improper Limitation of Cross-Examination of Prosecution Witness[3]</u>

In Ground 3 of the petition, McKay alleges the trial court improperly limited her cross-examination of Wallace Garner, a prosecution witness.  In her appeal brief, McKay elaborated that the trial court did not allow cross-examination of Wallace Garner for bias, undermining her right of confrontation under the Sixth and Fourteenth Amendments.  (Dkt. 9-1, pp. 24-27.)

According to testimony adduced at trial, two other adults resided at the McKays' house at the time of C.L.'s death:  Chrystal Proctor and Wallace Garner.  In an attempt to shift blame onto the two other adults living in the house at the time of C.L.'s death, Petitioner McKay's counsel asked questions regarding whether either was a "caretaker" under Oklahoma law.  The State objected to the line of questioning.

> Defense counsel:  I would ask the Court to take judicial notice of Uniform— Oklahoma Uniform Jury Instruction Criminal 4-37, it's the elements of neglect of a child.  "That no person may be convicted of neglect of a child unless the state has proved beyond a reasonable doubt each element of the crime."
>
> State:  Your Honor, may we approach?  This is entirely inappropriate to do in front of a jury.
>
> The Court:  It is.
>
> Defense counsel:  Judge, she opened up the door when she asked about being a caretaker.
>
> State:  May we approach?
>
> Court:  You may.  This is not appropriate at this time.
>
> (The following proceedings occurred at the bench outside the hearing of the jury:)
>
> Court:  Okay.  First of all, I have no idea why you're going to the elements of the crime with somebody who is not a lawyer or an expert on the law or

---

[3]  The Court begins its analysis with Ground 3 of the petition because as stated above, Grounds 1 and 2 were procedurally defaulted.

knowledgeable of the OUJIs.  Are you going to read the elements and ask her opinion?  If you want to go into whether or not who the caretaker is, that's fine.  That's factual.

Defense counsel:  They denied being a caretaker.  Under the law they are.

Court:  Who's denied it?

Defense counsel:  She did.

Court:  Oh, she denied being a caretaker?

Defense counsel:  Correct.

Court:  Then just ask her, but you're not going to –

State:   That's absolutely totally inappropriate to start talking about the legal definition of a caretaker.

Court:  I agree.

State:  He can ask her if she knows the legal definition of caretaker and her opinion of what a caretaker is.

Court:  You can ask her if she knows or doesn't know.  If she doesn't know, she's not going to know.
. . .
But if you want to ask her if she's aware of what a caretaker is and somehow factually establish through her whether she was or wasn't so they can weigh the facts from the evidence as to whether she was or wasn't; right?

Defense counsel:  Fine.

Court:  Okay.

(The following proceedings occurred within the presence and hearing of the jury:)

. . .

Defense counsel:  Ms. Proctor, you said you were not a caretaker; correct?

Witness Chrystal Proctor:  No.

Defense counsel:  No, you didn't say it or, no you're not a caretaker?

Witness:  No, I'm not a caretaker.

Defense counsel:  Okay.  And if the definition of a caretaker under Oklahoma law included any person over the age of 18 residing in the home of a parent of a child under 18, would you then be a caretaker?

State:  Objection to the form of the question.

Court:  Sustained.

State:  Calls for a legal conclusion.

Defense counsel:  I'm not asking for a legal conclusion.  I'm asking her if the definition—

Witness:  I don't know the definition.

Defense counsel:  I'm not asking you if you know the definition.

State:  Objection.  And it was sustained, Your Honor.

Court:  Sustained.

(Dkt. 15-1, pp. 30-32.)

Similarly, the next day on cross-examination of Wallace Garner, McKay's attorney posed questions regarding Garner's status as a "caretaker."

Defense counsel:  Were you aware that you are criminally liable for the conditions C.L. was in?

State:  Objection.

Court:  Sustained.

Witness Wallace Garner:  No.

State:  I would request an instruction to the jury that that be disregarded, that it is untrue.

Court:  Yeah.  The jury will be so instructed.

Defense counsel:  Judge, I think I've established he's a person responsible.

State:  May we approach?

Court:  I think we went through this yesterday.

State:  Thank you.

Court:  I'm going to sustain the objection.  We're not going to get into the elements of crimes and whether he's criminally liable.  There's no need to approach.

Defense counsel: Very good.

(Dkt. 15-1. Pp. 37-38.)

On appeal McKay argued her attorney was attempting to establish bias or motive in Garner's testimony.  Specifically, whether Garner knew he was criminally liable for the care of C.L., and thus had motive to lie about what happened the day of C.L.'s death (Dkt. 9-1, pp. 24-27).

The OCCA found no merit to McKay's argument:

In Proposition III, Appellant contends she was denied her right to confrontation by the trial court's improper limitation of counsel's cross-examination of prosecution witness Wallace Garner regarding whether he was aware that he was criminally liable for the conditions C.L. was in.  Appellant argues the improper limitation on the cross-examination prevented counsel from determining whether the witness had a bias or motive to testify falsely.

The Sixth Amendment guarantees a defendant the right to cross-examine witnesses; it also allows a trial judge to place reasonable limits on cross-examination. *Mitchell v. State*, 2011 OK CR 26 ¶ 58, 270 P.3d 160, 176 (quoting *Thrasher v. State*, 2006 OK CR 15, ¶ 7, 134 P.3d 846, 849 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986)).  Not all limitations on cross-examination of a prosecution witness run afoul of the right of confrontation. *Id.*  Trial judges have wide latitude to impose reasonable limits on such cross-examination based on concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*  We generally review a trial judge's limitations on the extent of cross-examination for an abuse of discretion. *Id.*

It is undisputed defendants are to be allowed to cross examine witnesses to expose bias, prejudice or motivation. *Scott v. State*, 1995 OK CR 14 ¶ 18, 891 P.2d 1283, 1291-92 (citing *Delaware v. Van Arsdall*, 475 U.S. 678-79) (other citations omitted)).  "Exposure of a witness's motive to testify is a proper and important function of cross-examination." *Mooney v. State*, 1999 OK CR 34, ¶ 52, 990 P.2d 875, 890.  Bias is never collateral, and the right to impeach for bias is construed liberally. *Id.*  Three factors govern the admissibility of this type of evidence:  it

must be (1) relevant, (2) otherwise admissible under constitutional and statutory authority, and (3) its probative value must not be substantially outweighed by the danger of unfair prejudice. *Id.*

Reviewing the court's limitation of Garner's cross-examination under *Mooney*, we find whether or not Garner thought he was criminally liable for the conditions in which C.L. lived, does not make it more or less probable that he was testifying truthfully.  Further, even if the defense had elicited testimony that Garner knew he was criminally liable, that would have merely opened the floodgate to questions concerning the potential for his criminal prosecution.  This ensuing line of questioning would certainly have been confusing to the jury and would distract from the main issue of the case – whether the defendants neglected the children.  Additionally, the answer to defense counsel's question was actually beyond Garner's knowledge as it is required a legal conclusion based on the legal elements of the offense of child neglect.

Here, the court's limitation on Garner's questioning did not deny Appellant the opportunity to expose any bias or prejudice on the part of the witness.  Counsel was able to ask if Garner took any part in C.L.'s care (he denied taking any part in C.L.'s care).  Counsel explored Garner's role in the living arrangements in the house (he lived in a front bedroom) and inquired into his actions the afternoon C.L. died.  Merely using or occupying a bedroom in the house and nothing more is not sufficient to raise criminal liability.  Sufficient information was presented to the jury allow them to evaluate Garner's truthfulness.  Accordingly, we find no Sixth Amendment violation as the trial court's limitation on allowing a lay witness to testify to a legal conclusion was a proper limitation on the cross-examination.

(Dkt. 9-3, pp. 8-10.)

Under controlling Supreme Court precedent, a defendant's opportunity to cross-examine opposition witnesses encompasses "exposure of a witness's motivation in testifying." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (other citations omitted)).  Trial courts have wide discretion in limiting the scope of cross-examination of a prosecution witness, particularly if there are concerns regarding "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.  In the Tenth Circuit, a jury is entitled "to have the benefit of a full cross-examination" as to the possible bias of a witness "in order to determine what weight to give [the witness's] testimony." *Jones v. Gibson*, 206 F.3d 946, 956

(2000) (citing *Davis*, 415 U.S. at 317).  Ultimately, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish."  *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original)).

Based on the foregoing, the Court cannot say the OCCA's determination was "contrary to" or "an unreasonable application of" controlling Supreme Court precedent.  The OCCA cited the rule established by the Supreme Court regarding the wide latitude given a trial court to limit cross examination that might be prejudicial or confusing.  The OCCA then determined that whether or not Garner was aware of his potential liability as a caretaker for C.L. did not make it "more or less probable" he was telling the truth.  The OCCA further held the caretaker issue would have confused the jury, whose inquiry was limited to determining whether the McKays neglected the children.  The OCCA properly identified the controlling Supreme Court law and reasonably determined the trial court's failure to allow further cross-examination on the caretaker question prevented confusion for the jury.  This Court finds the OCCA's holding was neither "contrary to" or "an unreasonable application of" federal law.  Accordingly, McKay's Ground 3 is DENIED.

**Ground 4:  Denial of McKay's Request for a Continuance**

In Ground 4 McKay alleges the trial court violated her constitutional rights in denying her attorney's request for a continuance to further prepare for cross examination of witness Dr. Jeremy Jones, C.L.'s pediatrician.

The information filed February 10, 2015, in Tulsa County District Court alleged that between September 1, 2014, and November 24, 2014, the defendants Robert and Sarah McKay committed the crime of felony child neglect against C.L. and J.L.  (Dkt. 16-7 pp. 58-59.)  The prosecution intended to ask Dr. Jones questions about his care of C.L. prior to the specified dates.

McKay's counsel argued information outside those dates was irrelevant and prejudicial, and he did not receive notice that evidence predating the dates in the information would be submitted at trial.  (Dkt. 15-1, p. 81.)

In response, the prosecution argued that under Oklahoma law (OKLA. STAT. tit. 22, §§ 401 and 405) precise dates are not required to be stated in an indictment or information unless "time is a material ingredient of the offense."  If time is stated in the charging document and there is a "variance" between the evidence and the dates alleged, "the date is not material so long as it is proven within three years prior to prosecution."  The prosecution contended it would limit Dr. Jones's testimony to three years prior to November 24, 2014, and argued further the defense had notice, through discovery and a preliminary hearing, the prosecution would submit evidence outside the dates specified in the information.  Based on the Oklahoma law cited by the prosecution, the trial court overruled McKay's objection and denied a continuance.  (Dkt. 15-1, pp. 83-87.)[4]

On appeal, the OCCA affirmed the trial court's denial of the request for a continuance, agreeing with the prosecution time was not a material ingredient in the offense of child neglect, and thus prior evidence was not precluded under Oklahoma law.  The OCCA further agreed the defense was notified of the prosecution's intent to submit evidence of neglect predating the dates specified in the information, and, as a result, McKay had proper notice of the issue to prepare a sufficient defense.  The OCCA thus held the trial court did not abuse its discretion in denying the motion for continuance.  (Dkt. 9-3, pp. 11-13.)

---

[4]  As summarized by the trial court, Dr. Jones was expected to testify about McKay's prior "failure to keep necessary medical appointments, failure to accept necessary medical service, failure to provide necessary and prescribed medications . . . ."

A trial court has wide discretion in determining whether a continuance should be granted. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983).   Continuances in criminal trials are generally disfavored absent "compelling reasons." *Id.*   The Sixth Amendment right to counsel is violated only when a trial court insists upon "expeditiousness in the face of justifiable request for delay." *Id.* at 11-12.   A federal court will grant habeas relief for denial of a continuance only where the denial was "arbitrary and unreasonable" and the denial rendered the trial fundamentally unfair, *Scott v. Roberts*, 975 F.2d 1473, 1475 (10th Cir. 1992), or where the denial "materially prejudiced" the defendant, *Phillips v. Ferguson*, 182 F.3d 769775 (10th Cir. 1999); *see also United States v. West*, 828 F.2d 1468, 1471 (10th Cir. 1987) (finding "defendant's need for a continuance and the prejudice resulting from its denial" to be "by far the most important factor" courts should consider).

This Court finds the OCCA's determination was neither "contrary to" or an "unreasonable application of" Supreme Court precedent.   McKay made no showing her defense was materially prejudiced by the denial of the continuance, nor has she demonstrated that as a result of the denial her trial was "fundamentally unfair."   McKay's attorney received records in discovery adequate to prepare for questions posed to Dr. Jones regarding C.L.'s treatment and condition prior to the dates specified in the information.   In light of the wide discretion given to a trial court in granting or denying continuances, this Court cannot find the OCCA's denial of the requested continuance was contrary to or an unreasonable application of federal law.   Accordingly, McKay's Ground 4 is DENIED.

**Ground 5:  Failure to Instruct Jury on Lesser Offense**

McKay alleges the trial court erred by excluding a jury instruction on the lesser offense of omission to provide for a child (Dkt. 1).   On appeal, the OCCA determined such an instruction

was not supported by the evidence and was improper under Oklahoma law.  Thus, the exclusion was not an abuse of discretion.  (Doc. 9-3, pp. 13-15.)

It is significant the OCCA's holding was based exclusively on Oklahoma law.  "Federal habeas relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  In reviewing a federal habeas petition, the Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68; *see also Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) ("claims of state law violations are not cognizable in a federal habeas action."). Habeas relief for claims of state-law error are available only when the error "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (other citations omitted); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus").

McKay's claim is thus not cognizable in this habeas action unless she can demonstrate that the absence of the instruction was so prejudicial it "fatally infected the trial and denied the fundamental fairness that is the essence of due process."  McKay has made no such showing.

"The Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in noncapital cases." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (citing *Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980)); *see also Fero v. Kerby*, 39 F.3d 1462, 1480 (10th Cir. 1994) ("a state court's failure to submit a lesser included offense instruction cannot form the basis for federal habeas relief") (citing *Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993)).  The Tenth Circuit follows a rule of "automatic non-reviewability" for habeas claims based

on a trial court's failure to give a lesser-offense instruction in non-capital cases.  *Dockins*, 374 F.3d at 938 (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)).

Accordingly, McKay's Ground 5 is DENIED.

## Ground 6:  Improper Admission of Inflammatory Photographs

McKay argues the trial court erred in allowing the jury to view photographs of C.L. taken after his death.  McKay contends they were "gruesome and inflammatory" and thus more prejudicial than probative (Dkt. 1).  The OCCA summarily denied her claim and determined the photographs were relevant, based on testimony presented at trial, and not "so unnecessarily hideous as to be unfairly prejudicial."  (Dkt. 9-3, p. 15.)

McKay's challenge to the admission of the photographs faces the same obstacle discussed in Ground 5, *supra*.  Specifically, a federal court is "not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights."  *Smallwood v. Gibson*, 191 F.3d 1257, 1274-75 (10th Cir. 1999) (citing *Estelle v. McGuire*, 502 U.S. at 67-68).  Habeas relief is therefore not available for McKay's claim the photographs were prejudicial "absent fundamental unfairness so as to constitute a denial of due process of law."  *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).

McKay has made no showing her due process rights were violated by the admission of the photographs.  Other evidence of C.L.'s neglected condition was presented at trial.  There is no support in the record the photographs so infected the jury as to render the proceedings fundamentally unfair and thus violate due process.  Accordingly, McKay's Ground 6 is DENIED.

## Ground 7:  Prosecutorial Misconduct

In Ground 7, McKay alleges the prosecutor improperly expressed her personal opinion of McKay's guilt and improperly called her a liar in closing arguments at trial (Dkt. 1).

According to the transcript, the prosecutor led the jury through the four elements of the offense of neglect of a child.  Regarding element four, the prosecutor stated,

> So 4 is "Adequate nurturance and affection or adequate food or shelter or sanitation or hygiene or medical or dental or supervision or appropriate caretakers or special care made necessary by the physical condition of the child," . . . .
>
> Now, that word "or" is extremely important.  You don't have to find all of them.  It's "or."  If you find there's one, that element is met.
>
> . . . .
>
> You don't have to unanimously agree, every person in the jury room doesn't have to agree that one certain specific type of neglect was met, but as long as each of you believe that one thing on that list was checked off, yes, I believe beyond a reasonable doubt that it was proven, one of those things on that list was checked, then you are unanimous in believing that the fourth element was met.
>
> . . . .
>
> You don't have to agree on that, but you agree that one of those was met and you're there.
>
> And that's really why I say beyond a reasonable doubt, it's the highest burden, but we've gone above and beyond that burden because not only have we proven at least one of those things, we've proven them all.  You check, check, check, check on that fourth element.  You only need one check, but I submit to you that you've got a lot of checks.  They're not just guilty, they're really, really, really guilty.

(Dkt. 15-1, pp. 117-120.)

In addition, in closing argument, the prosecutor referred to certain testimony of both of the McKays and witnesses Porter and Garner as "lies" and stated "it's a fact that they're lying."  (Dkt. 15-1, pp. 136-40.)

The OCCA acknowledged the impropriety of prosecutors expressing their personal opinions of the guilt of a defendant and of calling witnesses or defendants "liars," but found such comments are grounds for overturning a conviction only when the conduct affected the fairness of the trial or was otherwise prejudicial to the defendant.  Viewing the comments in context of the

trial as a whole, the OCCA found the prosecutor's comments were "based on the evidence and reasonable inference therefrom and as such fell within the prosecutor's wide range of permissible argument."  (Dkt. 9-3, pp. 15-16.)

Improper prosecutorial comments rise to the level of a constitutional violation only when the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  In reviewing claims of improper remarks by a prosecutor, a court sitting in habeas is directed to look at the "totality of the circumstances" in which the comments were made, *Smallwood v. Gibson*, 191 F.3d 1257, 1276 (10th Cir. 1999), and to view the comments "within the context of the trial as a whole," *Duvall v. Reynolds*, 139 F.3d 768, 794 (10th Cir. 1998).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution.  We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . .  Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

*Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (quoting *Hopkinson v. Shillinger*, 866 F.2d 1185, 1210 (10th Cir. 1989)).

A prosecutor is granted a "reasonable amount of latitude in drawing inferences from the evidence during closing summation."  *Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998). Although considered "unnecessary and unwarranted" the Tenth Circuit has not held that referring to testimony as a "lie" is *per se* prosecutorial misconduct.  Even where improper comments are made, they take on constitutional dimension only when they are so egregious as to render the trial

fundamentally unfair.  *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999); *see also Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002).

This Court is not convinced the findings of the OCCA regarding the prosecutor's comments in closing argument were contrary to or an unreasonable application of Supreme Court precedent. A great deal of evidence was presented regarding McKay's treatment of C.L. and J.L.  In light of the significant evidence presented to the jury, and the wide latitude given to the prosecutor to make closing argument, it cannot be said the statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181.  Thus, this Court cannot find the OCCA's determination was "contrary to" or "an unreasonable application of" federal law. Accordingly, McKay's Ground 7 is DENIED.

**Ground 9:  Improper Admission of Victim Impact Statement[5]**

McKay alleges the trial court improperly allowed a statement by the legal guardians of J.L. to be read into the record at sentencing.  She contends that because the offense was not considered a "violent" crime, the statement should have been disallowed pursuant to Oklahoma law (Dkt. 1). In her brief on appeal, McKay argued the victim impact statement was so prejudicial it caused the trial court to order her two sentences to run consecutively instead of concurrently.  (Dkt. 9-1, pp. 42-48.)  The OCCA agreed the offense of child neglect is not a "violent" crime under Oklahoma law, and it was error for the trial court to admit the victim impact statement at McKay's sentencing. The OCCA held, however, that the error did not affect McKay's "substantial rights" because in Oklahoma, "sentences are to run consecutively unless the trial judge, in his or her discretion, rules otherwise."  The determination whether to execute sentences concurrently or consecutively also "rests within the sound discretion of the trial court."  The OCCA presumes a court's sentencing

---

[5]  Ground 8 of the petition, which raises ineffective assistance of counsel in underlying claims, will be discussed last.

decision is "based on the law and made without passion or prejudice." The OCCA held McKay had not rebutted the presumption and her arguments the victim impact statement caused the trial judge to order her sentences to run consecutively were mere speculation insufficient to rebut the court's presumption. (Dkt. 9-3, pp. 20-21.)

As stated above, federal habeas relief does not lie for errors of state law. *See Estelle v. McGuire*, 502 U.S. at 68; *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017). A federal court's "role on collateral review isn't to second-guess state courts about the application of their own laws but to vindicate federal rights." *Eizember v. Trammell*, 803 F.3d 1129, 1145 (10th Cir. 2015). Thus, to the extent McKay is challenging the admission of victim impact testimony as improper under Oklahoma law, there is no relief available for such an error on habeas review unless there is a showing the admission rendered the trial so fundamentally unfair as to constitute an independent due process violation. *Leatherwood,* 861 F.3d at 1043; *see also Lewis*, 497 U.S. at 780.

McKay has made no showing her due process rights were violated by the admission of the victim impact testimony. There is no support in the record the victim impact testimony so infected the judgment of the trial court as to violate due process, nor is there support for McKay's contention the victim impact testimony caused the trial court to run her sentences consecutively. It is mere speculation. This Court, therefore, cannot find McKay's trial was so fundamentally unfair as to constitute a violation of McKay's due process rights. Accordingly, McKay's Ground 9 is DENIED.

## Ground 10:  Excessive Sentences

In her final ground for relief, McKay contends the sentences she received were excessive given mitigating factors in her favor and the improperly-admitted victim impact statement (Dkt.

1).  On appeal, McKay argued the evidence at trial did not establish she intentionally harmed her children and there was no evidence C.L. was physically abused.  In fact, the defense presented evidence C.L. died of natural causes resulting from complications from his Charcot-Marie-Tooth disease and leukoencephalopathy.

The OCCA determined it would not modify the sentence because it was within the statutory range and within the context of the facts and circumstances, the sentence did not shock the conscience of the Court of Appeals.  (Dkt. 9-3, p. 21.)[6]

The question before the Court is whether the OCCA's affirmance of the life sentence for child neglect for C.L. and twenty-seven-year sentence for child neglect for J.L. are "contrary to" or "an unreasonable application" of federal law as determined by the Supreme Court.  The Supreme Court has not determined, outside of capital cases, that a defendant is entitled to "individualized sentencing," where the sentencing court determines the factors for or against a sentence of death. *Harmelin v. Michigan*, 501 U.S. 957, 995-96 (1991).  The Supreme Court has also recognized the longstanding tradition of allowing state legislatures to make and implement policy decisions in sentencing.  *See Ewing v. California*, 538 U.S. 11, 25 (2003) ("Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts.").  In interpreting the Supreme Court jurisprudence, the Tenth Circuit has accorded "wide discretion" to state trial courts in sentencing matters, finding generally such challenges are not cognizable on habeas review unless a sentence is imposed "outside the statutory limits" or otherwise "unauthorized by law."  *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *see also United States v. Gillespie*,

---

[6] Oklahoma statute dictates the sentencing range for child neglect convictions as imprisonment in the custody of the Department of Corrections "not exceeding life imprisonment, by imprisonment in a county jail not exceeding one (1) year."  OKLA. STAT. tit. 21 § 843.5(C).

452 F.3d 1183, 1190 (10th Cir. 2006) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.").

Significantly, the Supreme Court holds in cases where it has not established a bright line rule, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 120 (2009) (quoting 28 U.S.C. § 2254(d)(1)); *see also Wright v. VanPatten*, 552 U.S. 120, 123 (2008); *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006); *House v. Hatch*, 527 F.3d 1010, 1017-18 (10th Cir. 2008).

McKay's sentence was not outside the statutory limitation for child neglect and the OCCA determined the sentence did not "shock the conscience."  Because the OCCA's decision was based exclusively on state law grounds, it is not cognizable by a federal court in a petition for writ of habeas corpus.  Even if this Court were to consider how the state court's result squared with federal law, as stated above, no clear rule exists.  Thus, the OCCA's affirmance could not be contrary to or an unreasonable application of it.  Accordingly, McKay's Ground 10 is DENIED.

**Ground 8:  Ineffective Assistance of Counsel**

Petitioner McKay alleges she was deprived of effective assistance of counsel at her trial. She contends specifically defense counsel (A) did not move for severance of her joint trial with Ronald McKay; did not instruct the jury on the limited use of Mr. McKay's statements against her; and did not request a jury instruction that separate consideration be given to Petitioner and Mr. McKay; (B) did not object to the improper opinion testimony of Dr. Passmore; (C) did not raise an objection to the prosecution's improper statements; (D) did not object to the jury instruction that excluded a lesser included offense; and (E) did not object to the improper victim impact statement admitted at sentencing (Dkt. 1, p. 13).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged standard for analyzing claims of ineffective assistance of counsel on habeas review.  First, the defendant must demonstrate her attorney's performance was deficient.  Second, the defendant must demonstrate the alleged deficient performance prejudiced her defense.  *Id.* at 687.  Under the first prong, a defendant must show her attorney's conduct fell below "an objective standard of reasonableness."  *Id.* at 688.  The Court presumes counsel's conduct falls within the acceptable range of reasonable professional assistance.  *Id.* at 689.  To overcome this presumption a defendant must show the alleged error could not be considered "sound trial strategy."  *Id.*

Even if a defendant demonstrates an objective attorney error, there is no constitutional violation unless she also shows she was prejudiced by the error.  *See Strickland*, 466 U.S. at 687.  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The *Strickland* Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome."  *Id.*

A. *Severance of joint trial and related instructions on weight to be given testimony of co-defendant*

McKay first argues her counsel was ineffective for failing to seek severance of the joint trial with her co-defendant and relatedly was ineffective for failing to request the jury be instructed on weight to give the testimony of her co-defendant.  McKay raised these issues directly in Ground I of her appeal, and through an effective assistance of counsel claim in Ground VIII of her appeal.

As to the severance issue, the OCCA determined that under Oklahoma law, severance is required when two defendants have "mutually antagonistic" defenses, meaning one defendant attempts to exonerate him or herself by placing blame entirely on the co-defendant.  Severance is not necessary merely when "the defenses of the co-defendants are inconsistent, in conflict or are

22

otherwise irreconcilable."  The OCCA determined the McKays' defenses were not mutually antagonistic, but in fact they shared "a common defense" that neither of them neglected the child victims.  The OCCA found specifically McKay "was not denied her constitutional right of confrontation," and "no plain error in the failure to sever the trials."  (Dkt. 9-3, pp. 4-6.)

The OCCA also analyzed the severance issue in McKay's claim of ineffective assistance of counsel and determined its finding of no plain error controlled the ineffective assistance of counsel question because "[a]ny objections by defense counsel would have been denied."  Thus, the OCCA held McKay's counsel's failure to request or object to the court's failure to sever the trial could not have constituted deficient attorney performance and as a result failed the first *Strickland* prong.  (Dkt. 9-3, pp. 17-18.)

Similarly, the OCCA found no error in the absence of jury instructions "regarding the jury's consideration of confessions/admissions by one co-defendant against the other" (OUJI-CR 9-16) and "that the jury should give separate consideration to the case of each individual co-defendant" (OUJI-CR 9-6).  (Dkt. 9-3, p. 6.)  Regarding the issue within the ineffective assistance of counsel context, the OCCA determined:

> In Proposition I we also reviewed the absence of OUJI-CR 9-16 and 9-6 for plain error.  We found Appellant had failed to show how her substantial rights were impacted by the absence of the instructions.  When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed.  *Malone v. State*, 2013 OK CR 1, ¶ 16, 293 P.3d 198, 207, citing *Strickland*, 466 U.S. at 697 [additional citations omitted].  To demonstrate prejudice an appellant must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors.  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."  *Id.* quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011) [additional citations omitted].  Appellant has not shown how she was prejudiced by the absence of the instructions.

(Dkt. 9-3, p. 18.)

The OCCA's resolution of these ineffective assistance of counsel claims was not "contrary to" or "an unreasonable application of" federal law as determined by the Supreme Court. *Strickland* is the Supreme Court's standard in analyzing ineffective assistance of counsel claims. The OCCA properly analyzed these claims according to Supreme Court precedent. Thus, this portion of McKay's ineffective assistance of counsel claim is DENIED.

B. *Admission of Dr. Passmore's Expert Testimony*

McKay next contends she received ineffective assistance of counsel because her attorney did not object to the opinion testimony of Dr. Passmore, a reviewing expert. McKay raised this claim in Ground II of her direct appeal and through an ineffective assistance of counsel claim in Ground VIII of her direct appeal.

The OCCA found no plain error in the admission of Dr. Passmore's testimony. Dr. Passmore, "a pediatrician and the chief child abuse examiner in Oklahoma" was fully qualified to testify on child neglect and her testimony was "helpful and admissible to assist the jury in its determination of the issues at trial." The OCCA thus found no plain error in the admission of Dr. Passmore's testimony. (Dkt. 9-3, pp. 7-8.) In the effective assistance of counsel context, the OCCA held "[a]ny objection by counsel would have been overruled and we will not find counsel ineffective for failing to raise objections which would have been denied." (Dkt. 9-3, pp. 18-19.)

Because the OCCA found no plain error in McKay's counsel's failure to object to the expert testimony, that failure cannot constitute "deficient performance" under the first prong of *Strickland*. Moreover, McKay has not shown how the outcome of the trial would have been different had her attorney objected. Thus, she cannot meet either prong of *Strickland*; her ineffective assistance of counsel claim regarding Dr. Passmore's testimony must fail. The claim is therefore DENIED.

24

### C.  *Prosecutorial Misconduct*

McKay alleges her counsel was ineffective for failing to object to improper statements made by the prosecutor in closing argument.  She raised this issue in Ground VII of her direct appeal, and within the context of ineffective assistance of counsel in Ground VIII of her direct appeal.

As discussed in the analysis of Ground 7, *supra*, the OCCA found no plain error in the comments made by the prosecutor.  In analyzing the issue for ineffective assistance counsel, the OCCA summarily denied the claim, stating, "[a]ny objections by counsel would have been overruled and will not support a claim of ineffective assistance."  (Dkt. 9-3 p. 19.)

This Court finds the OCCA's determination is not "contrary to" or "an unreasonable application of" federal law on this question.  The OCCA clearly determined that had counsel objected, the objections would have been overruled.  Without a showing counsel's omission was deficient, she cannot make out a claim under *Strickland*.  The claim is therefore DENIED.

### D.  *Exclusion of a Lesser Included Offense Jury Instruction*

In the petition for writ of habeas corpus, McKay also raised her counsel's failure to object to the exclusion of a lesser included offense instruction.  McKay raised this claim in Ground 5, and this Court discussed it, *supra*, but McKay did not raise the claim as ineffective assistance of counsel in her direct appeal to the OCCA.  Because the state court did not have the opportunity to deal with this claim on its merits, the claim did not receive its required round of review by the courts of the state of Oklahoma before being raised in a federal court.  Accordingly, the claim is unexhausted and not ripe for review in this habeas petition.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); 28 U.S.C. § 2254(b)(1)(A).

Despite this defect, the Court may summarily dismiss the claim on its merits.  As previously determined in the discussion of Ground 5, the Supreme Court has not recognized a right to a lesser

included instruction in noncapital cases.  *See Dockins*, 374 F.3d at 938.  And in the Tenth Circuit such claims are "automatically non-reviewable."  *Id*.  Based on the lack of a constitutional right to such an instruction, counsel's failure to object cannot be a deficient performance under the first prong of *Strickland*.  Thus, McKay's ineffective assistance claim for her attorney's failure to object to the lesser included offense instruction must fail.  Accordingly, McKay's claim is DENIED.

      E.  *Admission of Victim Impact Testimony*

McKay alleges her attorney provided ineffective assistance in failing to object to the improper victim impact testimony the trial court allowed at sentencing.  She raised this issue in Ground IX and the corresponding ineffective assistance claim in Ground VIII of her direct appeal.

The OCCA found plain error in the admission of the testimony under Oklahoma law, but determined the error did not affect McKay's "substantial rights" because McKay did not demonstrate her sentence was impacted by the statement.  Similarly, the OCCA held that without a showing of prejudice an ineffective assistance of counsel claim would not meet the burden under *Strickland*.  Accordingly, McKay's ineffective assistance of counsel claim regarding the victim impact testimony is DENIED.

Based upon the analysis, *supra*, for which each ineffective assistance of counsel claim was found lacking, McKay's Ground 8 claims are DENIED.

## CONCLUSION

In summary, Petitioner has not shown that she is in custody in violation of the Constitution. The Court therefore denies the petition for writ of habeas corpus.  Further, because petitioner has not shown that reasonable jurists would debate this Court's assessment of her constitutional claims or its determination that some of her claims are procedurally barred, the Court DENIES a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Aboutanaa El Habti in place of Debbie Aldridge as party respondent.

2. The petition for writ of habeas corpus (Dkt. 1) is DENIED.

3. A certificate of appealability is DENIED.

4. A separate judgment shall be entered in this matter.


DATED this 24th day of November 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE